### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **GLENDA ANDERSON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:11-CV-1687-N** |
| | § | |
| **NATIONAL CITY MORTGAGE, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to Special-Order 3-251, this case has been automatically referred for pretrial management.  Before the Court is *Defendant National City Mortgage's 12(b)(6) Motion to Dismiss*, filed August 12, 2011 (doc. 10).  Based on the relevant filings and applicable law, the motion should be **GRANTED** if Plaintiff does not file an amended complaint within the allotted time, and **DENIED as moot** if she timely files an amended complaint.

### I.  BACKGROUND

This case involves real property located at 1204 Dunbarton Drive, Richardson, Texas 75081 (the property).  (doc. 1-1, p. 6.)  On October 21, 2002, plaintiff Glenda Anderson (Plaintiff) executed a promissory note in the amount of $149,808.00 payable to National City Mortgage, LLC, d.b.a. Commonwealth United Mortgage Co. (NCM).[1]  (*Id.* at 33.)  She also executed a deed of trust on the property to secure payment under the promissory note.  (*Id.* at 23-33.)  At some point, GMAC Mortgage, LLC (GMAC)[2] became the holder of the note and the mortgagee under the deed of trust.  (*Id.* at 33-35.)  On March 28, 2011, GMAC sent Plaintiff letters entitled "Appointment of Substitute

---

[1] NCM explains that it was a division of NCB and both are predecessors by merger to PNC Bank, N.A. (PNC). (doc. 10, p. 1, n. 1.)  For all intents and purposes, NCM, NCM, and PNC are the same entity.

[2] The original petition incorrectly designates GMAC as "GMAC Mortgage Corporation." (*See* doc. 1-1, pp. 2, 33.)

Trustee" and "Notice of Substitute Trustee's Sale." (*Id.*)  The letters explained that default had

occurred under the note and deed of trust, and that the substitute trustee would sell the property at

a public auction held on May 3, 2011, at 10:00 a.m.  (*Id.* at 33-34.)  The letter also stated that

GMAC was the current owner and holder of the note and was the beneficiary under the deed of trust.

(*Id.* at 35.)  GMAC later sent an additional notice of the foreclosure sale, notifying Plaintiff that the

sale would take place on June 7, 2011, and that she had until June 1, 2011, to stop the foreclosure

sale and eviction.  (*Id.* at 11.)

On July 1, 2011, Plaintiff filed this *pro se* action in the 298th Judicial District Court for

Dallas County, Texas, against NCM and GMAC.[3] (*Id.* at 2, 74.)  She filed a petition titled "Affiant's

Application and Original Petition for Constructive Fraud."  (*Id.*)  The petition sought the court to

declare the deed of trust invalid, order the deed of trust removed from the property's title, and quiet

title in Plaintiff's favor.  (*Id.* at 3.)  The petition alleged that "the defendant did not adhere to the

change admitted by PNC."  (*Id.*)  Plaintiff also filled out a case information sheet, marking the issues

as "Fraud/Misrepresentation," "quiet title," and "Other Foreclosure" and the remedy sought as a

"Temporary Restraining Order/ Injunction."  (*Id.* at 74.)

Plaintiff additionally filed an affidavit claiming an interest in the property, seeking an

emergency temporary restraining order (TRO), and requesting an order vacating the "Writ of

Possession."  (*Id.* at 5-9.)  The affidavit stated that the defendants had served her with a notice of

substitute trustee's deed "without an answer to the original Notice QWR[4] [containing] a demand for

_____

[3] In her original petition, Plaintiff incorrectly identified the defendants as plaintiffs and also named NCB as a defendant.
As discussed, however, NCB is the same as NCM and PNC for all intents and purposes.  (doc. 1-1, p. 2.)

[4] QWR stands for qualified written request.  By making this allegation, Plaintiff appears to be claiming a violation of
the Real Estate Settlement Procedures Act ("RESPA") but does not invoke RESPA or allege a specific violation of the
RESPA.

proof of ownership (Owner in Due Course)." (*Id.* at 7.)  The affidavit contained Plaintiff's affirmations in her right in her own person under the United States Constitution, the Bill of Rights, and the Declaration of Independence and stated that she had not waived any of these rights. (*Id.* at 6.)  The affidavit asserted that Plaintiff had knowledge of perjury and tampering of court records, that "[n]otice to agent is notice to principle" and vice versa, and that the uncontested affidavit is "[n]otice to all other third party principal and agents." (*Id.* at 6-7.)  It further made vague references to the "eternal and unchanging principles of the laws of Commerce" stating that under commercial law, "[a] workman is worthy of his hire," "[a]ll are equal under the law," and that an un-rebutted affidavit "stand[s] as truth" and "becomes judgment in commerce." (*Id.* at 7-8.)

In another affidavit filed with the state court, Plaintiff stated that she had personal knowledge of "improper notice of foreclosure, fraudulent assignments, and conspiring among lenders and attorneys to steal [her] property." (*Id.* at 80.)  She alleged "fraud in general with main focus on extrinsic (collateral fraud) (can't show holder in due course)" (*Id.* at 80-81), and claimed that she "was induced into a contract without a full disclosure by an attorney that was hired and appeared in  a jurisdiction without [her] consent . . . which is considered to be an act of fraud to take money out or from [her] account (social security number)" (*Id.* at 81).  She invoked her constitutional rights and her individual liberties granted by the state and federal constitutions. (*Id.* at 80.)  She also invoked "freedom of contract" as "a basic and fundamental right reserved to the people by the Fifth and Fourteenth Amendments to the Constitution." (*Id.*)  She stated that anyone "who interferes without contesting [her] oath with a counter oath under penalty of perjury will be agreeing to a full criminal investigation and admitting to the value of $500,000.00 per interference." (*Id.* at 81.)  She requested a TRO restraining the defendants from foreclosing on her property, a temporary injunction preventing such foreclosure, and a permanent injunction after a trial on the merits. (*Id.* at 82-83.)

On July 5, 2011, the 298th District Court of Dallas County granted Plaintiff's request for a TRO, and scheduled a hearing on Plaintiff's request for temporary injunction for July 18, 2011. (*Id.* at 37, 92.) On July 8, 2011, Plaintiff filed another application requesting a TRO. (*Id.* at 37, 94-95.) On July 15, 2011, NCM removed the action to the federal district court for the Northern District of Texas. (doc. 1.) The following month, NCM moved to dismiss Plaintiff's petition under Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b) for failure to state a claim upon which relief can be granted. (doc. 10.) Plaintiff did not respond and the motion is now ripe for consideration.

### III. 12(b)(6) & 9(b) STANDARDS

Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). Under the 12(b)(6) standard, a court cannot look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Although "detailed factual allegations" are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead

"enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 129 S. Ct. at 1949 (citations omitted).  When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 129 S. Ct. at 1950-51.

A dismissal for failure to plead fraud with particularity pursuant to Rule 9(b) is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim. *McCall v. Genentech, Inc.*, 2011 WL 2312280, at *3 (N.D. Tex. June 9, 2011) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)).  Rule 9(b) contains a heightened pleading standard and requires a plaintiff to plead the circumstances constituting fraud with particularity.  *See* Fed. R. Civ. P. 9(b); *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010).  "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim. *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003).

## IV.  CONSTRUCTIVE FRAUD

NCM contends that Plaintiff has made only conclusory allegations of constructive fraud and has offered no facts to show that it committed constructive fraud or that a fiduciary relationship existed between herself and NCM as required to state a constructive fraud claim.  (doc. 10, pp. 4-5.)

Although the Fifth Circuit has not decided whether a claim of constructive fraud must satisfy the heightened pleading standard of Rule 9(b), the federal district court for the Northern District of Texas has held on several occasions that a plaintiff must do so in order to defeat a motion to dismiss. *See Schroeder v. Wildenthal*, 2011 WL 6029727, at *4 (N.D. Tex. Nov. 30, 2011) (summarizing cases). Under Texas law, "constructive fraud is the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests." *Archer v. Griffith*, 390 S.W.2d 735, 740 (5th Cir. 1960). "Constructive fraud, as a concept, has fuzzier edges and is less susceptible of easy definition." *See In re Soza*, 542 F.3d 1060, 1072 (5th Cir. 2008) (concurrence) (citing *Rosen v. Matthews Const. Co., Inc.*, 777 S.W.2d 434, 437 (Tex. App.—Houston [14th Dist.] 1989), *rev'd on other grounds*, 796 S.W.2d 692 (Tex. 1990)). However, it is "most frequently found in a breach of a fiduciary or confidential relationship." *Vickery v. Vickery*, 999 S.W.2d 342, 377 (Tex. 1999).

Texas law recognizes two types of fiduciary relationships. The first is a formal fiduciary relationship, such as between attorney and client, principal and agent, partners, and joint venturers. *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998). The second is an informal or confidential relationship that "may arise from a moral, social, domestic, or purely personal relationship of trust and confidence." *Associated Indem. Corp. v. CAT Contracting Co.*, 964 S.W.2d 276, 287–88 (Tex. 1998). Such an informal or confidential relationship "may arise when the parties have dealt with each other in such a manner for a long period of time that one party is justified in expecting the other to act in its best interest." *Morris*, 981 S.W.2d at 674. It may also arise in cases in which "influence has been acquired and abused, in which confidence has been reposed and betrayed." *Associated Indem. Corp.*, 964 S.W.2d at 287. Texas courts do not recognize or create such an informal or confidential fiduciary relationship lightly. *K3C Inc. v. Bank of Am., N.A.*, 204

6

F. App'x 455, 461 (5th Cir. 2006); *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997).

Here, Plaintiff has not pled any facts giving rise to a reasonable inference that she had a long-standing relationship of trust and confidence with NCM, that NCM dealt with her in such a manner for a long period of time that she was justified in expecting NCM to act in its best interest, or that NCM betrayed her confidence or acquired and abused influence or control over her.  The allegations in her complaint and the attached documents merely allege that NCM was the original lender under the note and deed of trust and assigned them to GMAC who foreclosed on the property without providing proof of ownership of the note and deed of trust.  Even if a lender-borrower relationship existed and continued to exist between NCM and Plaintiff after the assignment, the lender-borrower relationship by itself does not involve a fiduciary, special, or confidential relationship.  *See Mfrs. Hanover Trust Co. v. Kingston Inv. Corp.*, 819 S.W.2d 607, 610 (Tex. App.—Houston [1st Dist.] 1991, no writ) (as a general rule, a bank and its customers do not have a special or confidential relationship); *Fed. Deposit Ins. Corp. v. Claycomb*, 945 F.2d 853, 859 n. 17 (5th Cir. 1991) (it is well-settled under Texas law that a borrower-lender relationship or mere subjective trust do not give rise to a special or fiduciary relationship).  Plaintiff has not alleged a confidential or fiduciary relationship or breach of other legal or equitable duty, as required to state a constructive fraud claim.

## V.  FRAUDULENT ASSIGNMENTS

NCM also argues that Plaintiff has failed to provide any factual support for her fraudulent assignments claim.  (doc. 10. pp. 5-6.)  To the extent that Plaintiff's assertion in her affidavit that she has personal knowledge of fraudulent assignments (*see* doc. 1-1, p. 80) can be liberally construed as a claim that NCM fraudulently assigned the note and deed of trust to GMAC, Plaintiff has not pleaded any factual support.  While she alleges elsewhere that the defendant(s) "can't show

7

holder in due course", the allegation is not sufficient by itself to state a fraudulent assignment claim. Given the lack of factual allegations, the fraudulent assignment claim is also subject to dismissal for failure to state a claim.

## VI.  CIVIL CONSPIRACY

NCM next contends that Plaintiff's assertion of conspiracy among lenders and attorneys to steal her property is conclusory and lacks factual support.  (doc. 10. pp. 5-6.)

To state a claim for civil conspiracy, a plaintiff must allege facts showing: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result." *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005).  A plaintiff asserting such a claim must prove that the defendants conspired "to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996) (citation and internal quotation marks omitted).  Civil conspiracy is defined as a "derivative tort" under Texas law because "a defendant's liability for conspiracy depends on participation in some underlying tort." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996).

Again, Plaintiff makes a conclusory allegation that she has knowledge of "conspiring among lenders and attorneys to steal her property" but does not provide any factual allegations in support of her claim.  (*See* doc. 1-1, p. 80.)  She has therefore failed to state a civil conspiracy claim.

## VII.  FRAUD & FRAUDULENT INDUCEMENT

NCM next contends that Plaintiff has made vague and conclusory assertions that she was fraudulently induced into a contract and that there were fraudulent transfers of money from her account.  (doc. 8, pp. 6-7.)

"The elements of fraud in Texas are (1) the defendant made a representation to the plaintiff;

8

(2) the representation was material; (3) the representation was false; (4) when the defendant made the representation[,] the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury." *Shandong Yinguang Chem. Indus. Joint Stock Co. Ltd., v. Potter*, 607 F.3d 1029, 1033 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).  To state a claim for fraudulent inducement under Texas law, a plaintiff must prove the basic elements of fraud as well as an underlying contract which was induced.  *Kevin M. Ehringer Enters., Inc. v. McData*, 646 F.3d 321, 325 (5th Cir. 2011) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998); *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001)).  A fraud and fraudulent inducement claim are both subject to the heightened pleading requirement of Rule 9(b).  *Potter*, 607 F.3d at 1032.

With respect to her fraud and fraudulent inducement claims, Plaintiff asserts that she "was induced into a contract without a full disclosure by an attorney that was hired and appeared in a jurisdiction without [her] consent . . . which is considered to be an act of fraud to take money out or from [her] account (social security number)."  (doc. 1-1, p. 81.)  Plaintiff's vague and conclusory allegations regarding her simple fraud and fraudulent inducement claims are insufficient to meet the heightened pleading requirement of Rule 9(b) and are therefore subject to dismissal for failure to state a claim.

## VIII.  WRONGFUL FORECLOSURE

To the extent Plaintiff's complaint is asserting a wrongful foreclosure claim, NCM argues that none of the facts alleged in her complaint raise her right of relief above the speculative level. (doc. 10, pp. 7-8.)  NCM contends that the complaint instead conclusively shows that it was not

involved in any foreclosure action against Plaintiff.  (*Id.*)

      The purpose of a wrongful foreclosure action is to protect mortgagors against mistake, fraud, or unfairness in the conduct of a foreclosure sale.  *See In re Keener*, 268 B.R. 912, 921 (Bankr. N.D. Tex. 2001) (citing 30 Tex. Jur. 3d Deeds of Trusts and Mortgages § 177 (1998)).  "Under Texas common law, a debtor may recover for wrongful foreclosure when an irregularity in the foreclosure sale contributes to recovery of an inadequate price of the property."  *Matthews v. JPMorgan Chase Bank, NA*, 2011 WL 3347920, at *2 (N.D. Tex. Aug. 1, 2011) (citing *Am. Sav. & Loan Ass'n of Houston v. Musick*, 531 S.W.2d 581, 587 (Tex. 1975)).   The debtor must show either that the mortgagee either failed to comply with statutory or contractual terms, or complied with such terms, yet took affirmative action that detrimentally affected the fairness of the foreclosure proceedings. *Sky/RGS Props., Ltd. v. First Nat'l Bank,* 1996 WL 707014, at *3 (N.D. Tex. Dec. 4, 1996) (citing *First State Bank v. Keilman*, 851 S.W.2d 914, 921-22 (Tex. App.— Austin 1993, writ denied).

      Here, the only allegation arguably in support of Plaintiff's wrongful foreclosure claim is her assertion that she has "personal knowledge of . . . improper notice of foreclosure."  (doc. 1-4.)[5] Plaintiff's allegation of improper notice is bare, generalized, conclusory, and unsupported by facts. Moreover, there are no allegations of an inadequate price resulting from the foreclosure sale and no allegations linking NCM to the foreclosure proceedings or sale.  Instead, the attachments to her complaint show that GMAC, and not NCM, was the holder of the note and deed of trust, and executed, and presumably sent, the notices concerning the appointment of substitute trustee, the

---

[5]  While Plaintiff does not identify a specific contractual or statutory violation, Texas Property Code § 51.002 requires a lender to provide notice of default and intent to accelerate, specify the action required to cure the default, and give the debtor an opportunity to cure the default within a minimum of 20 days.  *Reed v. Litton Loan Servicing, LP*, 2011 WL 817357, at *4 (E.D. Tex. 2011) (citing Tex. Prop. Code § 51.002(d)).  If the lender invokes the power of sale under a security instrument, the lender must also provide notice to the borrower of the time and place of the foreclosure sale at least 21 days prior to the date designated for the sale.  *Id.* (citing Tex. Prop. Code § 51.002(b)).

substitute trustee sale, and the foreclosure sale.[6]  Plaintiff's wrongful foreclosure claim is therefore

also subject to dismissal for failure to state a claim.

## IX.  SUIT TO QUIET TITLE

NCM moves to dismiss Plaintiff claim for suit to quiet title on the grounds that she has not

stated any facts to demonstrate that she has the right, title, or ownership of the property at issue.

(doc. 10, pp. 8-9.)

A suit to quiet title, also known as a suit to remove cloud from title, "relies on the invalidity

of the defendants claim to property." *Gordon v. West Houston Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex.

App.—Houston [1st Dist.] 2011).  Such a suit exists "to enable the holder of the feeblest equity to

remove from his way to legal title any unlawful hindrance having the appearance of better right."

*Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.) (quoting *Thomson*

*v. Locke*,1 S.W. 112, 115 (Tex. 1886)).  In a suit to quiet title, a plaintiff "must allege right, title, or

ownership in himself or herself with sufficient certainty to enable the court to see [that] he or she

has a right of ownership that will warrant judicial interference."   *Wright v. Matthews*, 26 S.W.3d

575, 578 (Tex. App.—Beaumont 2000, pet. denied).  The plaintiff must recover on the strength of

his or her own title, not on the weakness of his adversary's title.  *Fricks v. Hancock*, 45 S.W.3d 322,

327 (Tex. App.—Corpus Christi 2001, no pet.).

Here, Plaintiff claims that the deed of trust is invalid and unenforceable and that it should

be removed as a cloud on title to the property.  (doc. 1-1. p. 3.)  She fails, however, to offer any facts

---

[6] Even if Plaintiff's complaint can be liberally construed as alleging that the foreclosure was wrongful because GMAC foreclosed without providing proof of ownership of the note and deed of trust, nothing in the complaint suggests that GMAC never held the note and deed of trust or that the documents were lost or stolen.  In any case, Plaintiff points to no provision of the Texas property code requiring a lender or his successors or assigns to provide proof of ownership of the note and deed of trust before conducting a non-judicial foreclosure sale.  *See Cannon v. JP Morgan Chase Bank, N.A.*, 2011 WL 683681, at *5 (E.D. Tex. Nov. 16, 2011) (citing *Sawyer v. Mortg. Elec. Registration Sys., Inc.*, 2010 WL 996768, at *3 (N.D. Tex. Feb. 1, 2010)).

explaining why the deed of trust is invalid and unenforceable or how she has a superior right or title to the property. Further, she does not dispute that she was in default on the note and does not allege any facts showing a defect in the foreclosure proceedings. Her claim for suit to quiet title is therefore subject to dismissal under Rule 12(b)(6).[7]

## X. DECLARATORY JUDGMENT

NCM moves to dismiss Plaintiff's request for a declaration that the deed of trust is invalid and unenforceable and must be removed from the title to the property. (doc. 10, pp. 7-8.)

Plaintiff's request for a declaratory judgment, though filed in state court, may be liberally construed as a request for declaratory judgment under the federal Declaratory Judgment Act, 28 U.S.C. § 2201. *See Wilkerson v. Citimortgage, Inc.*, 2011 WL 6937382, at *9 (N.D. Tex. Oct. 24, 2011). The Act allows a federal court to declare the rights and legal relations of any interested party. *Id.* However, the availability of a declaratory judgment depends upon the existence of a judicially remediable right. *Id.* (citing *Schilling v. Rogers*, 363 U.S. 666, 677 (1960)). Since Plaintiff has failed to state a viable claim for relief, NCM is entitled to dismissal of her declaratory judgment action as well.[8]

## XI. OPPORTUNITY TO AMEND

Notwithstanding a plaintiff's failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Byrnes*, 2008 WL 398314, at *1 (N.D. Tex. Feb.13, 2008); *Sims v. Tester*, 2001 WL 627600,

---

[7] To the extent that Plaintiff is attempting to assert a RESPA claim or any claims under the state and federal constitutions, she has failed to sufficiently plead those claims as well.

[8] NCM is also entitled to dismissal of Plaintiff's request for injunctive relief. "To obtain injunctive relief, plaintiff is required to plead and prove, *inter alia*, 'a substantial likelihood of success on the merits.'" *Jackson v. Fed. Home Loan Mortg. Corp.*, 2011 WL 3874860, at *3 (N.D. Tex. Sept. 1, 2011) (citing *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996)). Since dismissal of Plaintiff's claims is warranted on the merits, she cannot establish any likelihood of success on the merits. *See id.*

at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to court order, *see Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2, or when a *pro se* plaintiff seeks to amend his complaint in response to a recommended dismissal, *see Swanson v. Aegis Commc'ns Group, Inc.*, 2010 WL 26459, at * 1 (N.D. Tex. Jan. 5, 2010); *Scott*, 2008 WL 398314, at * 1.  Courts may appropriately dismiss an action with prejudice without giving an opportunity to amend when the plaintiff fails to respond to a motion to dismiss after being specifically invited to do so by the court, the defendant has specifically noted the failure to respond, and the plaintiff has had ample opportunity to amend the complaint. *Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995) (noting passage of 327 days).  Dismissal with prejudice is also appropriate if a court finds that the plaintiff has alleged his or her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

While Plaintiff has failed to respond to NCM's motion to dismiss, she has not amended her complaint since filing this action, and it does not appear that she has pled her best case to the court. She should therefore be accorded an opportunity to amend her complaint to sufficiently state a claim for relief.

## XII.  RECOMMENDATION

If Plaintiff does not file an amended complaint that states a claim for relief within the 14 days for objections to this recommendation, or a deadline otherwise set by the Court, NCM's motion to dismiss should be **GRANTED**, and all of Plaintiff's claims against it should be dismissed with prejudice.  If Plaintiff timely files an amended complaint, however, the motion should be **DENIED as moot**, and the action should be allowed to proceed on the amended complaint.

**SO RECOMMENDED on this 17th day of January, 2012.**


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


14